**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

IN RE APPLICATION OF THE
WASHINGTON POST TO UNSEAL
JUDICIAL RECORDS RELATED TO            Misc. Action No. 1:26-mc-14
SEALED PROCEEDING(S)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**THE WASHINGTON POST'S MOTION TO INTERVENE AND UNSEAL**

Through this motion, WP Company LLC d/b/a/ *The Washington Post* (the "*Post*") seeks

to vindicate the public's right of access to certain sealed judicial records – related to federal law

enforcement officers' fatal shooting of an unarmed Virginia resident in 2017 – that are

presumptively public under the First Amendment and the common law (the "Sealed Records").

The *Post* respectfully requests that this Court enter an order granting it permission to intervene

for the limited purpose of this motion to unseal the Sealed Records.  The *Post* further requests

that, if the Court determines that any portion of the requested records properly remains sealed at

this time, the Court should enter an order setting a "sunlight date" when the remaining materials

shall be automatically unsealed absent a showing by an opposing party that the materials should

remain sealed.

**BACKGROUND**

**I.      THE FATAL SHOOTING OF BIJAN GHAISAR**

On November 17, 2017, Bijan Ghaisar, a 25-year-old resident of McLean, Virginia, was

fatally shot by officers of the United States Park Police ("Park Police").[1]  Shortly before, Ghaisar

---

[1] Tom Jackman, *Man shot by U.S. Park Police dies, was unarmed, family says*, Wash. Post (Nov. 28, 2017), https://www.washingtonpost.com/news/true-crime/wp/2017/11/28/man-shot-by-u-s-park-police-dies-was-unarmed-family-says.

was driving down the George Washington Memorial Parkway in Alexandria, when he suddenly stopped in the left lane, causing another driver to rear-end him.[2]  Someone in the other car called 911 to report the accident.[3]  Two Park Police officers—later identified as Alejandro Amaya and Lucas Vinyard—soon spotted Ghaisar's car, activated their lights and sirens, and signaled for Ghaisar to pull over.[4]

A pursuit ensued.  At some point early in the chase, 911 dispatch informed the officers that Ghaisar was the victim, not the perpetrator, of the reported collision.[5]  Nevertheless, the officers remained in pursuit.  Video shows Ghaisar twice pulled over to the side of the road.[6] Both times, Officers Amaya and Vinyard approached Ghaisar's car with guns drawn, and Ghaisar drove off.[7]  The first time Ghaisar fled, one of the officers is captured on video slamming his gun on Ghaisar's car.[8]  The second time Ghaisar fled, the video shows the officers

---

[2] Tom Jackman, *Park Police shooting victim was rear-ended by another car at start of incident, then fled, report says*, Wash. Post (Jan. 18, 2018), https://www.washingtonpost.com/news/true-crime/wp/2018/01/18/park-police-shooting-victim-was-rear-ended-by-another-car-at-start-of-incident-then-fled-report-says.

[3] Tom Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, Wash. Post (Jan. 24, 2018), https://www.washingtonpost.com/news/true-crime/wp/2018/01/24/video-shows-park-police-fired-nine-shots-into-bijan-ghaisars-jeep-at-close-range-killing-him.

[4] Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, supra n.3; Tom Jackman, *Videos of Park Police shooting given to FBI, but still no information on who was shot, or why*, Wash. Post (Nov. 22, 2017), https://www.washingtonpost.com/news/true-crime/wp/2017/11/22/videos-of-park-police-shooting-given-to-fbi-but-still-no-information-on-who-was-shot-or-why.

[5] Tom Jackman, *Park Police officers who killed Bijan Ghaisar were told before pursuit he wasn't suspect in fender bender, recording shows*, Wash. Post (Aug. 13, 2021), https://www.washingtonpost.com/dc-md-va/2021/08/13/police-told-ghaisar-jeep-struck.

[6] Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, supra n.3.

[7] *Id.*

[8] *Id.*

parking in front of Ghaisar's vehicle, running to his window, and when Ghaisar again fled, kicking at his car.[9]  The officers continued to pursue Ghaisar until he came to a third and final stop.[10]  This time, when Ghaisar attempted to flee, Officers Amaya and Vinyard began shooting, firing more than nine rounds at close range into the car.[11]

Ghaisar was struck several times, including in the head.[12]  He was taken to the hospital in critical condition and placed on life support.[13]  He died a little over a week later.[14]  It was subsequently confirmed that Ghaisar was unarmed when officers shot and killed him.[15]

## II.   THE ENSUING INVESTIGATIONS

Although Park Police immediately launched an investigation into the conduct of its officers, within days the Federal Bureau of Investigation ("FBI") took over "in the interest of objectivity."[16]  The Department of Justice's Civil Rights Division and the U.S. Attorney's Office for the District of Columbia oversaw the FBI's investigation.[17]  According to a letter from the

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, *supra* n.3; Jackman, *Videos of Park Police shooting given to FBI, but still no information on who was shot, or why*, *supra* n.4; Jackman, *Man shot by U.S. Park Police dies, was unarmed, family says*, *supra* n.1.

[17] Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, *supra* n.3; Tom Jackman, *U.S. Park Police officers will not face federal charges in shooting of Bijan Ghaisar*, Wash. Post (Nov. 14, 2019), https://www.washingtonpost.com/local/public-safety/us-park-police-officers-will-not-face-charges-in-shooting-of-bijan-ghaisar/2019/11/14/1497a788-f1ab-11e9-89eb-ec56cd414732_story.html.

Department of Justice to the Ghaisar family, the FBI's investigation involved interviewing "over 150 individuals, including law enforcement officers from [the Park Police], Fairfax County Police Department, and the Federal Law Enforcement Training Center, as well as civilian and medical witnesses"; collecting physical evidence, some of which it sent "for testing and analysis"; and conducting "extensive ballistics and trajectory analyses . . . to determine both the sequence of the shots fired and which officer was responsible for each shot."[18]  It also involved a recreation of the fatal shooting.  In June 2018, agents were seen taking photographs and measurements at the scene, searching nearby brush, and then engaging in a full-scale reenactment of the incident.[19]

After approximately two years, the FBI closed its investigation.  On November 14, 2019, the Department of Justice announced its decision, telling the Ghaisar family by letter that, "[a]fter a review of all the evidence," it was declining "to prosecute this matter as a federal civil rights crime" and, as such, had "decided to close this matter."[20]  In June 2022, the Department of Justice stated that it would not reopen its investigation into the shooting.[21]

---

[18] *Justice Department letter declining charges in Ghaisar case*, Wash. Post (Nov. 15, 2019), https://www.washingtonpost.com/context/justice-department-letter-declining-charges-in-ghaisar-case/f478c2df-af9d-47a4-a10b-fb4803f4e160/?itid=sr_126.

[19] Tom Jackman, *As silence continues, family files FOIA requests in Park Police slaying of Bijan Ghaisar*, Wash. Post (July 10, 2018), https://www.washingtonpost.com/news/true-crime/wp/2018/07/10/as-silence-continues-family-files-foia-requests-in-park-police-slaying-of-bijan-ghaisar/.

[20] Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, supra n.3; Jackman, *U.S. Park Police officers will not face federal charges in shooting of Bijan Ghaisar*, supra n.17.

[21] Tom Jackman, *Justice Dept. won't reopen probe of Bijan Ghaisar's slaying by Park Police*, Wash. Post (June 10, 2022), https://www.washingtonpost.com/dc-md-va/2022/06/10/justice-department-declines-reopen-ghaisar/.

In December 2019, after the Department of Justice's decision not to charge the Park Police officers, the Fairfax County Attorney announced that his office intended to present the case to a grand jury for possible murder charges.[22] In October 2020, a Fairfax County grand jury returned a true bill charging Officers Amaya and Vinyard with manslaughter and reckless use of a firearm.[23] The charges were dismissed a year and a half later, however, after the defendants removed the case to federal court.[24] Although the Virginia Attorney General's Office and the Fairfax County Attorney's Office initially appealed that decision to the U.S. Court of Appeals for the Fourth Circuit, the Attorney General subsequently dropped the appeal, ending the Commonwealth's attempt to criminally prosecute the officers for Ghaisar's death.[25]

---

[22] Tom Jackman, *Fairfax prosecutors seeking indictments against Park Police officers in fatal shooting of Bijan Ghaisar*, Wash. Post (Dec. 18, 2019), https://www.washingtonpost.com/crime-law/2019/12/18/fairfax-prosecutors-seeking-indictments-against-park-police-officers-fatal-shooting-bijan-ghaisar/. Even though it had closed its own investigation by that point, the FBI reportedly withheld hundreds of documents from Fairfax County prosecutors who took up their own investigation into the shooting. Tom Jackman, *FBI withholds hundreds of documents from Fairfax in probe of Bijan Ghaisar killing*, Wash. Post (June 5, 2020), https://www.washingtonpost.com/crime-law/2020/06/05/fbi-withholds-hundreds-documents-fairfax-probe-bijan-ghaisar-killing.

[23] Tom Jackman, *Park Police officers charged with manslaughter in 2017 slaying of unarmed motorist Bijan Ghaisar*, Wash. Post (Oct. 15, 2020), https://www.washingtonpost.com/nation/2020/10/15/bijan-ghaisar-manslaughter-charges/.

[24] Tom Jackman, *Manslaughter case in Park Police killing of Bijan Ghaisar moves to federal court*, Wash. Post (Apr. 23, 2021), https://www.washingtonpost.com/dc-md-va/2021/04/23/ghaisar-case-to-fed-court/; Tom Jackman, *Judge dismisses criminal charges against Park Police officers in Bijan Ghaisar slaying*, Wash. Post (Oct. 22, 2021), https://www.washingtonpost.com/dc-md-va/2021/10/22/ghaisar-case-dismissed/.

[25] Tom Jackman, *Prosecution appeals dismissal of Bijan Ghaisar manslaughter case vs. Park Police officers*, Wash. Post (Oct. 26, 2021), https://www.washingtonpost.com/crime-law/2021/10/26/va-appeals-ghaisar-ruling/; Tom Jackman, *Va. Attorney General Miyares ends prosecution of U.S. Park Police officers in Ghaisar case*, Wash. Post (Apr. 22, 2022), https://www.washingtonpost.com/dc-md-va/2022/04/22/ghaisar-case-dismissed/.

In August 2018, the Ghaisar family filed a civil lawsuit against the federal government over the fatal shooting, but the case ultimately settled after the government agreed to pay the Ghaisar family $5 million.[26]  The case officially concluded in July 2023.[27]

In November 2024, the Department of the Interior's Office of Inspector General released a final report on its investigation into the fatal shooting of Ghaisar, concluding that the officers were justified in shooting Ghaisar.[28]  It referred the report "to the National Park Service (NPS) Director,"[29] who took no further action.  Seven years after the fatal shooting, Officers Amaya and Vinyard were taken off paid administrative leave and officially returned to work.[30]  To the undersigned counsel's knowledge, as of this filing, no federal or state investigations, criminal prosecutions, or civil suits arising from the shooting remain pending.

## III.   THE FEDERAL GOVERNMENT'S CONCERTED EFFORT TO KEEP INFORMATION ABOUT THE SHOOTING HIDDEN FROM THE PUBLIC

The fatal shooting of Bijan Ghaisar quickly became the subject of local and national news.  But the Park Police, the FBI, the Department of Justice, and various other agencies were

---

[26] Tom Jackman, *U.S. agrees to $5 million settlement over police killing of Bijan Ghaisar*, Wash. Post (Apr. 21, 2023), https://www.washingtonpost.com/dc-md-va/2023/04/21/bijan-ghaisar-settlement-park-police-shooting.

[27] *Ghaisar et al. v. United States*, No. 1:19-cv-01224-CMH-IDD, ECF 167 (E.D. Va. July 18, 2023); *id*., ECF 168 (July 20, 2023).

[28] Tom Jackman, *Officers were justified in shooting Bijan Ghaisar, inspector general finds*, Wash. Post (Nov. 12, 2024), https://www.washingtonpost.com/dc-md-va/2024/11/12/ghaisar-park-police-shooting-justified/; Report No. 22-0785, *Investigation: U.S. Parl Police Officers' Use of Deadly Force Following a Pursuit on the George Washington Memorial Parkway*, U.S. Dep't of Interior (Nov. 12, 2024), https://www.doioig.gov/sites/default/files/2021-migration/Investigation_U.S.ParkPoliceOfficers%27UseofDeadlyForceFollowingaPursuitontheGeorgeWashingtonMemorialParkway.pdf.

[29] *Id*. at 2.

[30] Tom Jackman, *Park Police officers who killed Bijan Ghaisar return to duty*, Wash. Post (Jan. 13, 2025), https://www.washingtonpost.com/dc-md-va/2025/01/13/bijan-ghaisar-vinyard-amaya-reinstated.

slow to release any details about the events of November 17, 2017, or the ensuing investigations, despite significant public interest and multiple requests for information. For example, the Park Police initially refused to release Ghaisar's name or the names of the officers who had killed him.[31] While Ghaisar's name then became public a few weeks after the shooting, the identity of the officers remained a closely guarded secret.[32] It was only in March 2019, in response to a discovery request as part of the family's civil lawsuit over the shooting, that the Park Police finally identified the two officers.[33]

Likewise, it was not until January 2018 that footage of the shooting was finally made public. The footage came from a Fairfax County police officer, who joined the chase approximately five minutes before the Park Police officers killed Ghaisar and captured the events on in-squad video.[34] Notably, Fairfax County's Police Chief made the decision to release the video, and when he notified the FBI and the Park Police of his intentions, both agencies discouraged him from doing so.[35] In March 2018, the FBI again advocated against releasing any

---

[31] Tom Jackman, *Silence again surrounds a police shooting in Fairfax County, this time by U.S. Park Police*, Wash. Post (Nov. 21, 2017), https://www.washingtonpost.com/news/true-crime/wp/2017/11/21/silence-again-surrounds-a-police-shooting-in-fairfax-county-this-time-by-u-s-park-police; Jackman, *Videos of Park Police shooting given to FBI, but still no information on who was shot, or why*, supra n.4.

[32] Jackman, *Man shot by U.S. Park Police dies, was unarmed, family says*, supra n.1.

[33] Tom Jackman, *Park Police officers who shot Bijan Ghaisar are identified*, Wash. Post (Mar. 29, 2019), https://www.washingtonpost.com/crime-law/2019/03/29/park-police-officers-who-shot-bijan-ghaisar-are-identified.

[34] Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, supra n.3.

[35] *Id*.; Tom Jackman, *Fairfax County Board of Supervisors asks FBI for answers, video in Park Police killing of Bijan Ghaisar*, Wash. Post (Dec. 12, 2017), https://www.washingtonpost.com/news/true-crime/wp/2017/12/12/fairfax-board-of-supervisors-asks-fbi-for-answers-video-in-park-police-killing-of-bijan-ghaisar; Tom Jackman, *Fairfax police chief urges FBI to release video of Park Police shooting soon. The Victim's family wants to see it now.*, Wash. Post (Dec. 4, 2017), https://www.washingtonpost.com/news/true-crime/wp/2017/12/04/fairfax-police-chief-urges-fbi-to-release-video-of-park-police-shooting-

7

evidence related to Ghaisar's shooting, claiming it could jeopardize an ongoing criminal investigation.[36]  In April 2018, U.S. Rep. Don Beyer wrote to the FBI to request an in-person meeting about the case along with "a timeline for the investigation's probable conclusion."[37] The FBI rejected the request to meet and provided no information on the timeline of its investigation.[38]

Weeks before the one-year anniversary of the shooting, Fairfax County released certain additional reports regarding the circumstances of the events on November 17, 2017.[39]  Despite the contents of these records—including a finding that Ghaisar did not have a weapon "in plain view or reach of the driver," no weapons were found in the "rear of the vehicle," and "nothing was found" on Ghaisar when he was patted down after being pulled from the car—both the Park Police and the FBI refused to confirm key details of the events, including whether Ghaisar was armed or otherwise posed a threat to the officers when they shot him.[40]  Nearly thirteen months

---

soon-the-victims-family-wants-to-see-it-now; Tom Jackman, *Second video released in Park Police Slaying of Bijan Ghaisar*, Wash. Post (Dec. 13, 2018), https://www.washingtonpost.com/crime-law/2018/12/13/second-video-released-park-police-slaying-bijan-ghaisar.

[36] Tom Jackman, *Federal officials refuse meeting on Park Police slaying of Bijan Ghaisar, move to stop release of 911 tape*, Wash. Post (Apr. 6, 2018), https://www.washingtonpost.com/news/true-crime/wp/2018/04/06/federal-officials-refuse-meeting-on-park-police-slaying-of-bijan-ghaisar-move-to-stop-release-of-911-tape.

[37] *Id.*

[38] *Id.*

[39] Tom Jackman, *Fairfax police: Bijan Ghaisar had no weapon when he was killed by Park Police*, Wash. Post (Oct. 29, 2018), https://www.washingtonpost.com/crime-law/2018/10/29/fairfax-police-bijan-ghaisar-had-no-weapon-when-killed-by-park-police. According to those records, Ghaisar did not have a weapon "in plain view or reach of the driver," no weapons were found in the "rear of the vehicle," and "nothing was found" on Ghaisar when he was patted down after being pulled from the car.  *Id.*

[40] *Id.*

after the shooting, the Fairfax County Police Department released a second video of the fatal encounter, again over federal investigators' repeated objections.[41]

## IV.    THE *POST*'S FOIA REQUEST AND LAWSUIT

On May 12, 2023, the *Post* submitted a FOIA request to the FBI for "[a]ll investigative reports, interviews, photographs, diagrams, PowerPoint presentations, video and other documents gathered in the investigation of the November 17, 2017 shooting of Bijan Ghaisar in Fairfax County, VA."  Compl. Ex. A, *WP Co. v. FBI*, No. 1:24-cv-101-RDM (D.D.C.), ECF 1.[42] After the FBI failed to respond to the *Post*'s FOIA request, the *Post* filed suit in the U.S. District Court for the District of Columbia.  *Id*.  In the course of that litigation, the FBI began processing records responsive to the *Post*'s request for release, *id*., ECF 11, and the parties jointly provided status updates to the Court regarding "any documents still to be produced pursuant to FOIA," an "anticipated schedule for processing and producing any such documents," and "any substantive areas of disagreement between the parties," *id*., Minute Order of Feb. 16, 2024.

Through this process, the *Post* learned that the FBI was withholding records responsive to its request.  *Id*., ECF 14 at 1.  The only explanation that the FBI provided in its redaction logs for many of these withholdings was "OTHER – Sealed Pursuant to Court Order."  *Id*.  The *Post* therefore requested that the FBI identify the court order in question, and the FBI stated "that it has confirmed that the sealed orders are from matter(s) that are under seal in their entirety.  The dockets themselves are entirely sealed and cannot be located on the public docket."  ECF 16 at 2,

---

[41] Jackman, *Video shows Park Police fired nine shots into Bijan Ghaisar's Jeep at close range, killing him*, supra n.3; Jackman, *Videos of Park Police shooting given to FBI, but still no information on who was shot, or why*, supra n.4; Jackman, *Second video released in Park Police Slaying of Bijan Ghaisar*, supra n.35.

[42] The *Post* also filed a related FOIA lawsuit against the Department of Interior, which has concluded.  *See WP Co. v. Dep't of Interior*, No. 1:24-cv-70-RDM (D.D.C.).

*id*. The FBI therefore declined to disclose to the *Post* any information about the sealing orders or the respective cases.  *Id*.

Nearly nine years have passed since Ghaisar's shooting, seven years have gone by since the FBI concluded its investigation, and four years have elapsed since the state criminal case ended.  The Ghaisars' civil lawsuit has long since settled.  Even Officers Amaya and Vinyard have returned to the force.  The time has thus long since come for the public to gain access to any and all remaining records about the Ghaisar shooting—and there is no cognizable basis for the FBI or any other agency to continue keeping such records a secret.  The *Post* therefore brings this motion to intervene and unseal the Sealed Records.

## ARGUMENT

### I.   THE *POST* HAS STANDING TO INTERVENE

News organizations have a firmly established right to intervene in judicial proceedings, including in criminal matters, to vindicate the public's right of access to judicial proceedings and records.  *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 262 (4th Cir. 2014) (noting that the Fourth Circuit "has previously permitted news organizations to intervene in actions in which they were not otherwise parties to challenge a district court's sealing order"); *United States v. Moussaoui*, 65 F. App'x 881, 884 (4th Cir. 2003) (permitting news organizations to intervene in criminal appeal for limited purpose of seeking to unseal portions of the appellate record and transcript of oral argument); *Rosenfeld v. Montgomery Cnty. Pub. Sch.*, 25 F. App'x 123, 131-32 (4th Cir. 2001) ("press has standing to intervene in actions in which it is not otherwise a party to seek review of a district court's order sealing documents and court records"); *In re Washington Post Co.*, 807 F.2d 383, 393 n.4 (4th Cir. 1986) (newspaper had standing to challenge sealing of records in criminal case "because it has suffered 'an injury . . . that is likely to be redressed by a

favorable decision'") (citation omitted).  Because that is precisely what the *Post* seeks to do here, it should be granted leave to intervene in this case.

## II.    THE COURT SHOULD GRANT PUBLIC ACCESS TO THE SEALED RECORDS

Both the Constitution and the common law provide powerful rights of access to court records and proceedings.  *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580 (1980).  Under the common law, "there is a presumption of access accorded to judicial records," which is overcome only when "countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).  Under the "more rigorous First Amendment standard," any "denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Id.*  Here, no matter which standard the Court applies, the balance tips decidedly in favor of unsealing the Sealed Records.

### A.    The Records Should Be Unsealed Under the First Amendment

"The First Amendment provides a right of access to a judicial proceeding or record: (1) that 'ha[s] historically been open to the press and general public;' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (quoting *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 8-10 (1986)).  Specifically, the First Amendment extends to "documents submitted in the course of a trial," such as transcripts, motions and other substantive filings.  *In re The Wall Street Journal*, 601 F. App'x 215, 218 (4th Cir. 2015) (quoting *In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999)).  Likewise, the right attaches to court orders, because "[w]ithout access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible." *Doe*, 749 F.3d at 267.  The constitutional right of access also extends to docket sheets, as "the ability of the public and press to attend civil and criminal cases would be merely theoretical if the information provided by docket sheets were

inaccessible." *In re Appl. of Reporters Comm. for Freedom of the Press to Unseal Criminal Prosecution of Julian Assange*, 2019 WL 366869, at *3 n.3 (E.D. Va. Jan. 30, 2019) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93-94 (2d Cir. 2004)); *see also Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 430 (4th Cir. 2005) (to allow the public to access materials such as search warrants, courts must "docket[] the order sealing the documents, which gives interested parties the opportunity to object after the execution of the search warrants") (cleaned up). When the First Amendment right of access applies to a judicial record or proceeding, "access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Doe*, 749 F.3d at 266 (cleaned up).

The Court should promptly unseal the Sealed Records under the First Amendment right of access. It is beyond dispute that the dockets and sealing orders constitute judicial records to which the First Amendment right attaches. As such, these records are presumptively public. Absent a clear finding that it is necessary to advance a compelling government interest, and that sealing these records entirely is narrowly tailored to serving that interest, such as a finding that targeted redactions would not suffice, their continued sealing is improper.

The government cannot meet that heavy burden to justify continued sealing. As noted above, there are no ongoing criminal investigations related to the Ghaisar shooting: both the federal and state criminal proceedings have concluded; the Department of the Interior issued its final report; and the Park Police officers who killed Ghaisar are back on duty. Moreover, the Fourth Circuit has noted that "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation." *Virginia Dep't of*

*State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004).  Redaction of information that could compromise an ongoing investigation sufficiently protects this interest.

To the extent that the government may assert an interest in the secrecy of grand jury proceedings, the *Post* does not object to redactions that are narrowly tailored as prescribed under Fed. R. Crim. P. 6(e), and only as prescribed.  *See In re Knight Publ'g Co.*, 743 F.2d 231, 233-36 (4th Cir. 1984) (approving district court's decision to unseal pretrial motions and excise only the name of a confidential informant, information that would identify him, material that would prejudice other defendants in pending cases, and "impertinent and scandalous material irrelevant to the issues").  But the burden is on the government to justify why grand jury proceedings about a nearly nine-year-old shooting, where the government has concluded any and all investigations and both of the public officials involved have been cleared of wrongdoing and are back on the job, merit continued secrecy.  Long-concluded grand jury proceedings are not necessarily compromised merely by unsealing the docket sheets and sealing orders in appropriate cases.

Given the passage of time and the conclusion of the criminal and civil matters arising from the Ghaisar shooting, the government cannot justify continuing to seal these orders and dockets.  Moreover, to the extent the government can articulate any compelling interest in the release of particular information, such concerns can be addressed by targeted redactions rather than blanket sealing of the Sealed Records and the entire proceedings to which they relate.

**B.      The Records Should Be Unsealed Under the Common Law**

The common law right applies to all judicial records and may be overcome only "in unusual circumstances," *Doe*, 749 F.3d at 266 (citation omitted), in which "the public's right of access is outweighed by competing interests," *In re Knight Publ'g Co.*, 743 F.2d at 235; *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy . . . judicial records and documents.").

The party seeking to keep judicial records sealed "bears the burden of showing some significant interest that outweighs the presumption" of openness. *Virginia State Police*, 386 F.3d at 575. More than a conclusory assertion of harm is necessary because "the inquiry must additionally focus on whether the asserted rights are actually compromised." *In re Appl. & Aff. for a Search Warrant*, 923 F.2d 324, 328 (4th Cir. 1991). Under the common law right of access as well, therefore, the Court should promptly unseal the Sealed Records.

**First,** the Sealed Records are presumptively public judicial records that "play a role in the adjudicative process." *In re Appl. of the U.S. for an Order Pursuant to 18 U.S.C. § 2703*, 707 F.3d 283, 290 (4th Cir. 2013).

**Second,** the public has a powerful interest in the Sealed Records. As this Court recognizes, "[t]here is a fundamental public policy supporting open access to court records, particularly for criminal proceedings." *United States v. Anderson*, 2015 WL 11111065, at *1 (E.D. Va. Mar. 16, 2015). Where the government is a party to the proceedings, the public's interest in access to related judicial records "is at its apex." *Doe*, 749 F.3d at 271. Such is the case here. The Sealed Records relate to the fatal shooting of a Virginia resident by two federal officers, both of whom were put on paid leave for more than seven years, who were investigated at both the federal and state levels, and who have now returned to duty. At every turn, the federal government sought to withhold even the most basic details regarding this shooting from the public, including the victim's name, the officers' names, video of the shooting, police reports regarding the shooting, ballistics evidence, and crime scene reconstruction details. Even now, in FOIA litigation related to the shooting, the government has refused to disclose even basic details regarding the cases on which it relies to withhold documents from the *Post*. Yet in any officer-involved shooting case, the public has a substantial interest in understanding the circumstances

14

of the fatal shooting of a civilian by government officials and the extent of the government's investigations into the incident. This case is no different, other than in the lengths to which the government has gone to keep the public in the dark. Access to the Sealed Records, at long last, would therefore promote public "understanding [of] the system in general and its workings in [this] particular case." *Richmond Newspapers*, 448 U.S. at 572.

**Third,** under the common law, a court must justify sealing a proceeding or judicial record by making specific findings on the record regarding the overriding interests to be served by secrecy and the reasons for rejecting alternative methods to protect those interests, supported by specific findings. *Virginia State Police*, 386 F.3d at 576 (explaining that "[a]dherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.") (citation omitted). The greater the extent of the sealing, the greater justification needed. Moreover, access may be denied only "when sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest.'" *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65-66 (4th Cir. 1989) (citation omitted). In such a case, the alternative to be considered "ordinarily involves disclosing some of the documents or giving access to a redacted version." *Id*. at 66.

The Fourth Circuit has emphasized that "the common law presumption is in favor of access" while recognizing that trial courts have discretion to determine in each case how best to strike the balance between the public's right of access and the other values that might be served by sealing. *In re Search Warrant*, 923 F.2d at 328-29. Importantly, "the presumption in favor of public access to court filings is especially strong where, as here, the filings involve matters of particular concern to the public," such as the shooting of a civilian, the potential malfeasance of law enforcement officers, and the government's justification for closing its investigation,

15

declining to prosecute, declining to reopen its investigation, and reinstating the officers to duty. *United States ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007).  For the reasons set forth above, the *Post* respectfully submits that no party will be able to make the necessary showing that there are "higher values" sufficient to justify the continued blanket sealing of the Sealed Records.  *See* Part II.A, *supra*.  At a minimum, the government will not be able to justify why *no* part of the docket(s) in the case(s) can be unsealed.

The public's common law right to access these judicial records, therefore, far outweighs any countervailing considerations, and the blanket sealing currently in place should not continue.

## III.  THE COURT SHOULD SET A "SUNLIGHT DATE" RATHER THAN ALLOW THE SEALED RECORDS TO REMAIN SECRET INDEFINITELY

Finally, if the Court determines that some portion of the records may remain sealed or be redacted, the Court should also take steps to ensure that the public gains access to those materials once the justification for sealing or redaction expires.  The criminal investigations related to this matter appear to have concluded, and even if some unknown part remains ongoing, "the government's interest in its ongoing investigation does not [last] forever."  *United States v. Moten*, 582 F.2d 654, 661 (2d Cir. 1978); *see also Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 947 (9th Cir. 1998) ("transcripts of public trial proceedings must be released when the factors militating in favor of closure no longer exist").

To avoid piecemeal, periodic re-litigation of public access to the Sealed Records, the *Post* therefore respectfully requests that, to the extent any portions of the records in question remain sealed, this Court retains jurisdiction to ensure that the records are made public promptly and automatically after the justification for their sealing expires.  To facilitate this, the *Post* requests that this Court set a "sunlight date" for six months from the date of any order on this motion, at which time the records would be automatically unsealed by the Clerk absent a showing by the

government or some other interested party that continued sealing is justified.  Because openness,

not secrecy, is the default condition for judicial records, such a sunlight provision would place

the burden for continued sealing where it belongs: on the government or other party who must

prove to the Court that these public records must continue to be kept away from public view.[43]

## **CONCLUSION**

For all of the foregoing reasons, the *Post* respectfully requests that this Court grant its

motion and enter an order unsealing the Sealed Records, and further that, if the Court determines

that any portion of the records may remain sealed, the Court enter an order setting a sunlight date

three months from the date of its order.

Dated:  June 2, 2026

Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Charles D. Tobin*
Charles D. Tobin
Maxwell S. Mishkin (*pro hac vice* forthcoming)
1909 K Street NW, 12th Floor
Washington, DC 20006
T: (202) 661-2200 | F: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

Isabella Salomão Nascimento (*pro hac vice*
forthcoming)
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
T: (612) 371-3281 | F: (612) 371-3207
salomaonascimentoi@ballardspahr.com

*Counsel for The Washington Post*

---

[43] Other courts have imposed similar requirements.  *In re Access to Certain Sealed Warrant Materials*, 2019 WL 2184825, at **3-4 (D.D.C. May 21, 2019) (setting a sunlight date three months after date of order unsealing search warrant materials); *United States v. Cohen*, 366 F. Supp. 3d 612, 634 (S.D.N.Y. 2019) (setting sunlight date less than three months after date of unsealing order); *United States v. Strevell*, 2009 WL 577910, at *7 (N.D.N.Y. Mar. 4, 2009) (setting a one-year sunshine date upon which sealing would expire "absent a timely motion to renew from the government" or defendant).

## <u>CERTIFICATE OF SERVICE</u>

I, Charles D. Tobin, hereby certify that on June 2, 2026, a copy of the foregoing was filed

electronically using this Court's CM/ECF system, and sent via U.S. Mail and email to:

J. Frank Bradsher
Executive Assistant U.S. Attorney
United States Attorney's Office for the Eastern District of Virginia
James W. Williams United States Attorney's Building
2100 Jamieson Ave.
Alexandria, VA 22314
frank.bradsher@usdoj.gov

Samuel G. Settle
Assistant United States Attorney
United States Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
samuel.settle@usdoj.gov

*/s/ Charles D. Tobin*
Charles D. Tobin